```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
RENTRAK CORPORATION,

                         Plaintiff,

         -against-                              MEMORANDUM & ORDER
                                                12-CV-1576(JS)(ARL)
FRED HANDSMAN,

                         Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Bernard D'Orazio, Esq.
                    Law Offices of Bernard D'Orazio, P.C.
                    100 Lafayette Street, Suite 601
                    New York, NY 10013

For Defendant:      Rex Whitehorn, Esq.
                    Rex Whitehorn & Associates, P.C.
                    11 Grace Avenue, Suite 411
                    Great Neck, NY 11021
```

SEYBERT, District Judge:

Currently pending before the Court is Court-ordered supplemental briefing regarding the parties' cross-motions for summary judgment on plaintiff Rentrak Corporation's ("Rentrak") breach of fiduciary duty claim against defendant Fred Handsman ("Handsman"). (Docket Entries 23, 26.) For the following reasons, Rentrak's motion for summary judgment on its breach of fiduciary duty claim is GRANTED and Handsman's motion for summary judgment on this claim is DENIED.

## BACKGROUND

The Court assumes familiarity with the factual and procedural background of this case, which is set forth in detail

in the Court's March 31, 2014 Memorandum and Order granting in part and denying in part the parties' cross-motions for summary judgment (the "March 2014 Order"). See Rentrak Corp. v. Handsman, No. 12-CV-1576, 2014 WL 1342960 (E.D.N.Y. Mar. 31, 2014). Briefly, Rentrak is an Oregon corporation that leases home entertainment products (e.g., DVDs and video games) to third-party retailers for use as rentals in their video rental stores. Id. at *1. Handsman was the president and majority shareholder of Video U.S.A. Entertainment, Inc. ("Video USA"), a now-defunct, New York corporation that operated a chain of video rental stores. Id.

On June 5, 2001, Video U.S.A. and Rentrak entered into a contract pursuant to which Rentrak leased its home entertainment products to Video U.S.A. so that Video U.S.A. could then rent them to its customers at its rental stores (the "Rentrak Agreement"). Id. Handsman signed the Rentrak Agreement solely in his capacity as president of Video U.S.A.; he did not personally guarantee the Rentrak Agreement. Id.

Under the Rentrak Agreement, if Video U.S.A. rented a particular title from Rentrak, it was required to share the rental fee revenue with Rentrak. Id. As a result of competition with new home entertainment services such as Netflix, in late 2009, Video U.S.A. encountered financial trouble, fell behind on its revenue payments to Rentrak, began closing unprofitable stores,

2

and liquidated Rentrak's inventory to pay off its debts.  Id. at
*2-3.

In November 2009, Rentrak sent Handsman several notices advising him that Video U.S.A.'s conduct constituted a breach of the Rentrak Agreement.  Id. at *3-4.  Rentrak also demanded that Video U.S.A. cease all sales and rentals of Rentrak's product and remit all revenue owed to Rentrak under the Rentrak Agreement. Id. at *3-4.  According to Rentrak, as of November 20, 2009, Video U.S.A. had over 20,000 units of Rentrak product in its possession. Id. at *4.  However, despite Rentrak's repeated demands that Video U.S.A. cease sales and return its product, Handsman, as president of Video U.S.A., personally decided to close down Video U.S.A.'s stores and liquidate Rentrak's product.  Id.  Handsman then used the sale proceeds to pay off other creditors and company expenses, some of which included debts that Handsman had personally guaranteed and various forms of Handsman's compensation.  Id. Video U.S.A. ultimately went out of business without remitting any portion of the liquidation proceeds to Rentrak.  Id.  In addition, at the time Video U.S.A. went out of business, Video U.S.A. owed Rentrak $124,059.31 in revenue sharing funds, which Video U.S.A. never remitted to Rentrak.  Id.

Rentrak commenced this action against Handsman on March 30, 2012.  The Amended Complaint stated claims for conversion, unjust enrichment, breach of fiduciary duty, money had and

3

received, and punitive damages.  (Docket Entry 5.)  On June 13, 2012, Handsman answered the Amended Complaint and asserted two counterclaims for attorney's fees.  (Docket Entry 13.)

On June 30, 2013, Rentrak moved for partial summary judgment on its conversion and breach of fiduciary duty claims. (Docket Entry 23.)  On July 3, 2013, Handsman opposed and filed a cross-motion for summary judgment on his attorneys' fees claims and Rentrak's conversion, unjust enrichment, and breach of fiduciary duty claims.  (Docket Entry 26.)  On March 31, 2014, the Court granted Rentrak's motion for summary judgment on its conversion claim, finding Handsman liable for conversion of Rentrak's inventory and $124,059.31 in revenue sharing funds that Video U.S.A. owed Rentrak at the time the company went out of business.  Rentrak, 2014 WL 1342960, at *6-9.  However, the Court temporarily denied the parties' motions for summary judgment with respect to Rentrak's breach of fiduciary duty claim, finding an issue of whether New York or Oregon law governed that claim.  Id. at *10.  The Court requested supplemental briefing on that issue, which is now pending before the Court.  (Docket Entries 30, 33.)

## DISCUSSION

I. Breach of Fiduciary Duty

The Court will first set forth the applicable legal standard before turning to the parties' motions.

4

A.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome

a motion for summary judgment.  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

"The same standard applies where, as here, the parties filed cross-motions for summary judgment."  Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)).  Thus, even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a district court is not required to grant judgment as a matter of law for one side or the other."  Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993).  "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  Morales, 249 F.3d at 121 (citation omitted).

B.  Analysis

Rentrak claims that Video U.S.A. breached its fiduciary duties when it failed to hold in trust and remit to Rentrak the revenue sharing funds generated by Video U.S.A.'s rentals and sales of Rentrak's products.  (Am. Compl. ¶¶ 29-32.)  Citing New York law, Rentrak seeks to hold Handsman personally liable for this

alleged breach because, according to Rentrak, "corporate officials may be held personally liable for a corporation's . . . breach of fiduciary duty through misappropriation of trust funds." (Pl.'s Br., Docket Entry 24-1, at 21.)  As noted, the Court temporarily denied the parties' cross-motions for summary judgment with respect to Rentrak's breach of fiduciary duty claim, finding an issue of whether New York or Oregon law governed that claim. However, it appears from their supplemental briefs, that both parties are content with the Court applying New York law. Accordingly, the Court will not engage in a choice-of-law analysis, notwithstanding that the Rentrak Agreement contains a choice-of-law provision that could require application of Oregon law to Rentrak's breach of fiduciary duty claim.  See Gov't Employees Ins. Co. v. Saco, No. 12-CV-5633, 2015 WL 1527611, at *3 (E.D.N.Y. Mar. 31, 2015) (declining to engage in a choice-of-law analysis because "[i]t appear[ed] from the briefing that both parties agree[d] that New York law applie[d] to th[e] dispute").  As discussed below, under New York law, summary judgment in favor of Rentrak on its breach of fiduciary duty claim is appropriate here.

"Under New York law, the elements of a cause of action for breach of fiduciary duty are: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'"  N. Shipping Funds I, LLC v. Icon Capital Corp., 921 F. Supp. 2d 94, 101 (S.D.N.Y. 2013) (quoting Johnson v.

7

Nextel Commc'ns, Inc., 660 F.3d 131, 138 (2d Cir. 2011)). Here, Handsman does not dispute that Video U.S.A. owed Rentrak a fiduciary duty to hold in trust and remit to Rentrak the revenue sharing funds generated by Video U.S.A.'s rentals and sales of Rentrak's products. Indeed, the Rentrak Agreement specifically states that Video U.S.A. "ha[d] a fiduciary duty to [Rentrak] to hold and remit all fees and charges to [Rentrak]" and "agree[d] to hold in trust for [Rentrak its] share of the rental and sales proceeds [Video U.S.A.] receive[d]." (Murphy Decl., Docket Entry 23-3, Ex. F § 9.7); see also St. John's Univ. v. Bolton, 757 F. Supp. 2d 144, 166 (E.D.N.Y. 2010) ("[A] contract may create a fiduciary relationship: If a contract establishes a relationship of trust and confidence between the parties . . . then a fiduciary duty arises from the contract which is independent of the contractual obligation." (internal quotation marks and citation omitted)). Nor does Handsman dispute that Video U.S.A breached its fiduciary duty to Rentrak when it failed to remit to Rentrak the funds generated by the liquidation of Rentrak's product or the $124,059.31 in revenue sharing funds that Video U.S.A. owed Rentrak when it went out of business.

Rather, Handsman argues that he cannot be held liable for Video U.S.A.'s breach of its fiduciary duty because he did not personally guarantee the Rentrak Agreement and therefore did not have a fiduciary duty to Video U.S.A. (See Whitehorn Affirm.,

8

Docket Entry 26, ¶¶ 12-17.) This argument is easily dismissed. Under New York law, "'a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable.'" Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 259 (S.D.N.Y. 2009) (quoting Bano v. Union Carbide Corp., 273 F.3d 120 (2d Cir. 2001)); see also Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 530 (S.D.N.Y. 2011) (stating that anyone who "knowingly participates in another's breach of fiduciary duty is jointly and severally liable for all compensatory damages caused by the breach." (internal quotation marks and citation omitted) (brackets omitted)).

Here, there is no question that Handsman participated in Video U.S.A.'s breach of fiduciary duty. As the Court previously found in granting Rentrak's motion for summary judgment on its conversion claim, Handsman was the only person at Video U.S.A. with the authority to close stores or direct the liquidation of inventory. Rentrak, 2014 WL 1342960, at *9 (citation omitted). Handsman met with Video U.S.A.'s accountant to discuss which creditors the company would pay and Handsman and Video U.S.A.'s bookkeeper made the ultimate decisions regarding payment to creditors when Video U.S.A.'s stores were closing. Id. (citations omitted). Additionally, Video U.S.A.'s accountant testified that

9

the criteria for determining which obligations to pay was to "[p]ay off all personal obligations." Id. (citation omitted). Handsman directed all of the activity involving Video U.S.A.'s attempt to pay of its creditors, and Rentrak did not receive any portion of its revenue sharing funds or the proceeds generated by the liquidation of its products. In sum, the record demonstrates that Handsman participated in Video U.S.A's breach of its fiduciary duty and he is therefore personally liable for the damages flowing from that breach. Accordingly, Rentrak's motion for summary judgment with respect to its breach of fiduciary duty claim is GRANTED and Handsman's motion for summary judgment on this claim is DENIED.

## II. Damages

Having decided summary judgment in Rentrak's favor on its conversion and breach of fiduciary duty claims, the sole task remaining in this case is to determine the fair market value of the Rentrak product that Handsman converted. In the March 2014 Order, the Court noted that this issue should be resolved by a jury. However, as Rentrak has subsequently advised the Court, Handsman has not served a jury demand. (Docket Entry 31.) Under Rule 38 of the Federal Rules of Civil Procedure, "a party may demand a jury trial by . . . serving the other parties with a written demand--which may be included in a pleading--no later than 14 days after the last pleading directed to the issue is served."

FED. R. CIV. P. 38(b)(1).  Handsman has not made a timely request for a jury trial, nor has he moved to extend his time to serve a jury demand.  He has therefore waived his right to a jury trial on damages.  The Court will contact the parties regarding potential dates for a damages hearing.

## CONCLUSION

For the foregoing reasons, Rentrak's motion for summary judgment on its breach of fiduciary duty claim (Docket Entry 23) is GRANTED and Handsman's motion for summary judgment on this claim (Docket Entry 26) is DENIED.


SO ORDERED.

/S/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     June   16  , 2015
           Central Islip, NY